UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

EXXON MOBILE CORPORATION, a New
Jersey corporation,

        Plaintiff,

        v.

FREEMAN HOLDINGS OF WASHINGTON,
LLC, a Washington Limited
Liability Company, d/b/a Million
Air-Moses Lake, and FRANCIS B.
FREEMAN, JR.,

        Defendants.

NO. CV-09-0390-EFS

**ORDER DENYING DEFENDANT
FRANCIS B. FREEMAN'S MOTION
TO DISMISS PURSUANT TO RULE
12(b)(6)**

Before the Court, without oral argument, is Defendant Francis B. Freeman Jr.'s Motion to Dismiss Pursuant to Rule 12(b)(6), which argues that the Amended Complaint fails to allege facts to support an alter-ego theory of liability. (ECF No. 109.) Exxon opposes the motion, requests leave to amend in the event the Court finds the Amended Complaint's alter-ego allegations insufficient, and notes that the motion does not seek dismissal of the conversion claims against Defendant Freeman. After reviewing the submitted material and relevant authority, the Court is fully informed. For the reasons set forth below, the Court denies the motion; Exxon may engage in discovery to support its veil-piercing theory of liability.

ORDER ~ 1

**A.    Background[1]**

For fifty years, Exxon supplied aviation fuel to customers at the Moses Lake Grant County International Airport ("Airport"). (ECF No. 63 ¶ 7.)  Exxon stored its fuel in leased fueling facilities and systems, including Storage Tank #38, at the Airport.  *Id.*

In July 2001, Exxon contracted with Air America Fuel & Services ("Air America") to store and distribute Exxon's fuel at the Airport.  *Id.* ¶ 8.  As Exxon's aviation-fuel-service provider, Air America did not take title to the fuel.  *Id.*

In fall 2008, Exxon notified the Port of Moses Lake ("Port") and Air America of its intentions to cease aviation-fuel operations at the Airport.  *Id.* ¶ 9.  Exxon and the Port decided that Exxon's lease would be terminated effective December 31, 2008.  *Id.*  Before this effective date, however, Exxon received notification that Air America was sold to Freeman Holdings, LLC ("FH") or Freeman Holdings of Washington, LLC ("FHW"), an entity solely owned, controlled, and dominated by Mr. Freeman, who resides in Florida.  *Id.* ¶¶ 2, 4, & 10.  Mr. Freeman traveled several times to Washington to finalize this purchase and establish the fuel-serving operation.  *Id.* ¶ 2.

Soon thereafter, Exxon discussed with FH, FHW, and Mr. Freeman ("Freeman entities") what would happen to the aviation fuel remaining in the storage tanks after December 31, 2008.  *Id.* ¶ 11.  The Freeman entities offered to purchase the remaining fuel at a below market price;

---

[1]    The "background" section is based on the Amended Complaint's (ECF No. 63) factual allegations.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

ORDER ~ 2

Exxon refused this offer. *Id.* ¶ 11. On December 30, 2008, a third party measured approximately 403,579 gallons of fuel in Storage Tank #38, the facility pipe work, hydrant system, and other refueling equipment. *Id.* ¶ 12.

Negotiations continued. *Id.* ¶ 13. On January 9, 2009, the Freeman entities demanded that Exxon sell the fuel to them at below market price or remove the remaining fuel. *Id.* Exxon rejected this demand; and likewise, Exxon's counter offer was rejected. *Id.* Then on January 26, 2009, Exxon proposed three options, which included the option of Exxon removing the fuel. *Id.* ¶ 14. Mr. Freeman rejected these options in a February 2, 2009 letter, wherein he stated that he believed Exxon had abandoned the fuel and therefore extinguished its legal right to the remaining fuel. *Id.* ¶ 15. Further negotiation attempts were unsuccessful. *Id.* Rather than pay for the remaining fuel or not use it, the Freeman entities sold and otherwise diverted the fuel. *Id.* ¶ 21. Mr. Freeman personally financially benefitted from these activities. *Id.* ¶ 2.

On December 29, 2009, Exxon filed this lawsuit. (ECF No. 1.) On November 2, 2010, the Court dismissed FH due to lack of personal jurisdiction and granted Exxon leave to amend the complaint to add Mr. Freeman as a defendant and an alter-ego theory of liability. (ECF No. 60.) The Amended Complaint seeks 1) a declaration under 28 U.S.C. § 2201 that Exxon was the legal owner of the remaining fuel and is entitled to compensation, 2) financial recovery for Defendants' conversion, and 3) fair compensation for Defendants' unjust retention of the remaining fuel or its value. (ECF No. 63.)

ORDER ~ 3

**B.   Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above the speculative level. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).  Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief. *Twombly*, 550 U.S. at 555.  In ruling on a motion under Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff and accept all material factual allegations in the complaint, as well as any reasonable inferences drawn therefrom. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

**C.   Authority and Analysis**

Defendant Freeman argues that the Amended Complaint's formulaic and conclusory assertions do not satisfy the necessary elements to disregard the corporate form because it fails to allege 1) the corporate form was deliberately used to violate or evade a duty and 2) Defendant Freeman overtly intended to disregard the corporate form to avoid a duty owed to Exxon.  Recognizing two veil-piercing theories of liability in Washington, Exxon argues that it need not prove a deliberate evasion of a duty under the alter-ego theory of liability.

The Court agrees that Washington case law has not clearly defined the circumstances under which a corporation's veil can be pierced.  This lack of definition was recognized by the Washington Supreme Court in 1964: "The decisions of this state defining when the courts will 'pierce

ORDER ~ 4

the veil' to look through the corporate organization and determine identity of responsibility are not so clearly harmonious as to render the law easy of application." *J.I. Case Credit Corp. v. Stark*, 64 Wn.2d 470, 475 (1964). Unfortunately, this lack of definition continues. Although case law uniformly agrees that a corporation is recognized as a separate legal entity until "sufficient reason arises to look beyond the mere form and entity of the corporation," *id.* at 477, case law does not utilize uniform terminology when determining whether to pierce a corporate veil. Terms range from "pierce[ing] . . . corporate veil on the alter ego theory," *Grayson v. Nordic Constr. Co., Inc.*, 92 Wn.2d 548, 553 (1979), "doctrine of disregard of corporate entity," *Morgan v. Burks*, 93 Wn.2d 580, 587 (1980), "theory of corporate disregard," *Meisel v. M & N Modern Hydraulic Press Co.*, 97 Wn.2d 403, 411 (1982), "pierce the veil," *J.I. Case Credit Corp.*, 64 Wn.2d at 475, "theory of piercing the veil," *Chadwick Farms Owners Ass'n v. FHC LLC*, 166 Wn.2d 178, 200 (2009). The Washington Supreme Court's trend is to discuss the doctrine, or theory of liability, in corporate-veil-piercing terms. *See Chadwick Farms Owners Ass'n*, 166 Wn.2d at 200; *Wash. Water Jet Workers Ass'n v. Yarbrough*, 151 Wn.2d 470, 503 (2004). Accordingly, the Court elects to utilize corporate-veil-piercing terms.

After reviewing the corporate-veil-piercing doctrine's development, the Court concludes that there are two basic elements that must be proven before the corporate veil can be pierced: 1) the corporate form is used to violate or evade a legal obligation, and 2) corporate-veil piercing is necessary to prevent a loss to an innocent party. *Chadwick Farms Owners Ass'n*, 166 Wn.2d at 200; *Meisel*, 97 Wn.2d at 410-11; *Washington*

*v. Davies*, 176 Wash. 100, 114 (1934).  The Court concludes that both of these elements must be established.[2]  *Contra Becker Family Builders Co-Plaintiffs Group v. Fed. Deposit Ins. Corp.*, No. C09-5477RJB, 2010 WL 3672352 (W.D. Wash. Sept. 14, 2010) (recognizing two corporate-veil-piercing theories in Washington).  Requiring the satisfaction of both elements ensures that the equitable corporate-disregard doctrine is used only when necessary to prevent the perpetration of a wrong or manifest injustice.  *Truckweld Equip. Co., Inc. v. Olson*, 26 Wn. App. 638, 643 (1980);  *Harrison v. Puga*, 4 Wn. App. 52, 62-63 (1971);

The first element, i.e., evasion of a legal obligation, requires "an abuse of corporate form" to the abuser's benefit and to the innocent party's detriment.  *Meisel*, 97 Wn.2d at 410.  In determining whether corporate form is being abused, the Court considers whether the corporate formalities are being followed, i.e., whether the corporation is merely an alter ego for the stockholder(s).  *See Grayson*, 92 Wn.2d at 553; *see also Minton v. Ralston Purina Co.*, 146 Wn.2d 385, 398 (2002) (manipulating the entities in order to avoid a legal duty); *Truckweld Equip. Co., Inc.*, 26 Wn. App. at 645 (discussing that fraudulent intent may be manifested if a corporation is extremely thinly capitalized); *Garvin v. Matthews*, 193 Wash. 152, 156-57 (1938) (piercing the corporate veil if an innocent party is harmed by an individual using a corporation

---

[2]  The Court recognizes it focused on "alter-ego" considerations in its Order allowing Exxon to file the Amended Complaint.  (ECF No. 60.) Nonetheless, as explained below, the Court determines the Amended Complaint survives the motion to dismiss.

ORDER ~ 6

merely as an instrumentality to conduct personal business); *Davies*, 176 Wash. at 113-14 ("[W]here a private person so dominates and controls a corporation that such corporation is his alter ego . . . ."); Thomas V. Harris, *Washington's Doctrine of Corporate Disregard*, 56 Wash. L. Rev. 253, 258 (March 1981) ("[T]here is such a commingling of property rights or interests as to render it apparent that the corporation and some other entity were intended to function as one."). Accordingly, in analyzing this first element, the Court considers alter-ego arguments; the Court does not understand there to be two veil-piercing doctrines, but rather different ways to establish this first element.

The second element focuses on whether the innocent party was harmed by the alter-ego conduct, fraud, bad faith, or other conduct attempting to evade a legal responsibility. *Meisel*, 97 Wn.2d at 410; *Morgan*, 93 Wn.2d at 587.

When the Amended Complaint's factual allegations and all reasonable inferences drawn therefrom are construed in Exxon's favor, the Court determines that the Amended Complaint plausibly supports a corporate-veil-piercing theory of liability. Exxon alleges that Defendant Freeman is using FHW to evade any potential legal obligation found in this lawsuit. Although an individual can legitimately form a corporation to reduce liability exposure, an individual cannot intentionally fail to abide by corporate formalities and then utilize the corporate form to evade a legal responsibility. *Meisel*, 97 Wn.2d at 411. The essence of Exxon's Amended Complaint is that Defendant Freeman, as the sole owner of FHW, so dominated and controlled FHW that allowing FHW to assert its corporate form in this action would injure Exxon's ability to recover the

ORDER ~ 7

value of its fuel.    Whether Exxon's corporate-veil-piercing theory of liability survives summary judgment will be before the Court at a later time.

**C.    Conclusion**

For the above-given reasons, **IT IS HEREBY ORDERED:**

1.    Defendant Francis B. Freeman's Motion to Dismiss Pursuant to Rule 12(b)(6) **(ECF No. 109)** is **DENIED.**

2.    Exxon may engage in discovery to support its corporate-disregard theory of liability, including taking the deposition of Mr. Balestrieri.

**IT IS SO ORDERED.**    The District Court Executive is directed to enter this Order and provide a copy to counsel.

**DATED** this __10th__ day of February 2011.


_____s/Edward F. Shea_____
EDWARD F. SHEA
United States District Judge

Q:\Civil\2009\0390.dismiss.freeman.frm

ORDER ~ 8